HARDY, Judge.
This is an action by plaintiff, the widow of Carl H. Vail, individually and as natural tutrix of the minor, Zachary H. Vail, for damages resulting from fatal injuries received by her husband when struck by an automobile belonging to the community of *264 defendants, husband and wife, and driven by the defendant wife. From a judgment rejecting her demands plaintiff has appealed.
The accident occurred on Masonic Drive at a point in front of a motel known as Parkway Courts in the City of Alexandria, Louisiana, at or about the hour of 10:30 p. m. on March 12, 1956. Decedent, walking across the street to the west, was struck by an automobile, driven south by Mrs. Charles Spampinato, which was allegedly moving at an excessive rate of speed. Plaintiff contends that, in addition to the dangerous and excessive rate of speed, Mrs. Spampinato did not have her car under proper control and was not keeping a proper lookout. Defendants denied any negligence on the part of Mrs. Spam-pinato and alternatively pleaded contributory negligence barring plaintiff’s recovery. On appeal counsel for plaintiff contends that the negligence of Mrs. Spampinato was the sole and proximate cause of the accident, but, in the event decedent should be found guilty of contributory negligence in connection with the accident, alternatively urges the applicability of the doctrine of last clear chance or discovered peril.
Mrs. Spampinato and her husband live in Shreveport but it seems that on the day of March 12, 1956, Mrs. Spampinato, without her husband’s knowledge or consent, had driven the family automobile, a 1956 DeSoto, to Alexandria for the purpose of conveying another woman to that city, in consideration of the payment of some indefinite sum of money as expenses. Immediately prior to the occurrence of the accident Mrs. Spampinato, accompanied by a female companion, one Myrtle Lee Edwards, had driven to the town of Boyce, and, returning to Alexandria, was driving south on Masonic Drive at a speed of 25 miles per hour, or more. As the car reached a point opposite the Parkway Courts Motel Mrs. Spampinato testified that she saw the figure of a man walk out upon the street from her left, that is, the east, and move to a point about halfway across the road, where he turned as if to retrace his steps, and then turned back in the effort to cross to the west side of the street, at which time he was struck by the right front of her car. Mrs. Spampinato testified that the man appeared to be staggering and she assumed he was drunk. The force of the impact was extreme, as evidenced by the fact that skidmarks for a distance of approximately 111 feet were evident on the wet pavement, and the body of the deceased came to rest on the west shoulder of the road some 30 feet in front of the stopped vehicle. Cigarettes, money and other possessions of the deceased were scattered along the highway for a distance of approximately 150 feet; his clothes were badly torn; one shoe was knocked off, and he suffered a compound fracture of the leg, a broken neck and internal injuries, death resulting within a brief period of time. Although the night was dark and a drizzling or misting rain was falling at the time, it was established that the area at and near the point of the accident was illuminated by lights from the Motel across the street, and it is clear that the atmospheric conditions had no deterring effect upon visibility. Mrs. Spam-pinato testified that she was only about 30 feet distant when she observed the actions of the decedent, which we have above described. Specifically, this defendant in her testimony confirmed a signed statement given to the Police authorities on the night of the accident which read as follows:
“I was driving my 1956 DeSoto car down Lee Street and turned to the left off Lee into Masonic Drive and had driven about three blocks down the street and about in front of Parkway Courts, and a man came walking from across the street from, I presume, the tourist court side. He was about 30 feet from my car when I first noticed him. He started across the street and got about halfway across the street and then turned and went back from the direction from which he came. At this moment he turned again and started *265 back across the street. A car was coming from the opposite direction facing me. Also a car was parked on the right side of Masonic Drive, which I thought was man’s car. There wasn’t anything I could do but hit man. I hit him with the bumper of my car, stopped the car, saw that man was hurt and got out of car, went over, looked at man and got a young lady that was in the car with me * * * to call ambulance.”
Mrs. Spampinato’s companion was unable to throw any light on the circumstances surrounding the accident, as she testified that she was adjusting the radio and saw the decedent only an instant before he was struck by the car.
The district judge found that Mrs. Spampinato was guilty of negligence in exceeding the legal speed limit of IS miles per hour. We not only concur in this finding, but we think it is conclusively established by the testimony of police officers as to the physical circumstances that the speed jf the Spampinato car was substantially in excess of the 25 or 30 miles per hour to which she admitted. We think it also follows, in view of her own testimony, that Mrs. Spampinato was guilty of negligence in failing to have her car under proper control.
We are further of the opinion that Mrs. .Spampinato’s testimony, as above quoted, is incredible upon its face. A pedestrian, staggering uncertainly across a paved highway, could not possibly have followed the pattern of behavior, to which Mrs. Spam-pinato testified, within the short space of time during which her car traveled 30 feet. If the speed of the Spampinato automobile be fixed at 30 miles per hour, which we believe far too conservative a figure, it covered the 30 foot distance, immediately preceding the impact, in approximately three-fourths of a second. Mrs. Spampinato would have it believed that in this fraction Df a second a man staggered part way rcross the width of the street, turned, started back in the direction whence he had come, hesitated, turned again and staggered to a point near the opposite side of the street, where he was struck. We are firm in the conclusion that this occurrence, as related by the witness, was palpably impossible.
We think there can be not the slightest question as to the negligence of Mrs. Spampinato. The next point that addresses itself to our attention concerns the charge of contributory negligence on the part of the decedent. We are equally firm in the conclusion that Vail was guilty of contributory negligence in attempting to negotiate the crossing of a city street, at a point not established as a pedestrian crossing, in the face of oncoming traffic. There is some testimony that indicates not only the proximity of the Spampinato car but of a car approaching from the opposite direction, in whose lights the' figure of Vail was outlined as he attempted to cross the street.
This finding of contributory negligence would effectively bar recovery by plaintiff in this action unless the facts indicate the- propriety of the application of the doctrine of last clear chance or discovered peril as laid down in the case of Jackson v. Cook, 189 La. 860, 181 So. 195, in which the facts were remarkably similar to those in the instant case. The defendant, Mrs. Spampinato, was guilty, not only of failure to avail herself of the last clear chance of preventing the unfortunate results of her initial negligence, attributable to excessive speed, and the contributory negligence of decedent, but she was further guilty of failure to avert the accident by the exercise of due diligence after discovering plaintiff’s peril. From the moment decedent was observed by Mrs. Spampinato, entering upon the street surface from her left, it was obvious that he was in a position of peril, and the driver of the approaching car, observing his danger, should have taken immediate precautions to avoid the possibility of an accident. This con- *266 elusion is strengthened by our firm conviction that Mrs. Spampinato must have observed the actions of the decedent at a much greater distance. than 30 feet. It is only a circumstance of cumulative weight that Mrs. Spampinato concluded from the actions of the imperiled pedestrian that he was so completely under the influence of intoxicants that he was staggering.
This is not one of the borderline cases in which a motorist is adjudged liable for negligence by reason of failure to observe that which could have been observed, for, in this instance, the actual observation was made, the peril was obvious and the driver of the vehicle took not the slightest precaution to avoid the accident.
Finally, we come to a consideration of the liability of the defendant husband, as head of the community of acquets and gains existing between himself and his wife. Concededly, the automobile being driven by Mrs. Spampinato was the property of the community, but we think there is a serious question as to whether Mrs. Spam-pinato at the time of the accident was engaged in an activity which could reasonably be associated with a community interest.
In the case of Brantley v. Clarkson, La. App., 39 So.2d 617, the opinion of this court observed that the legitimate pursuits of a wife in the interest of wholesome recreation or pleasure, or for other purposes consonant with the intangible and imponderable obligations of the marital relationship should be considered as within the scope of community activities. Notwithstanding this observation, we felt impelled to the conclusion that the mission of a wife for the purpose of procuring a knitting needle in order to knit a sweater for her personal use and adornment constituted an activity outside and beyond the purview of a community interest, under the broad principle enunciated by the Supreme Court in Adams v. Golson, 187 La. 363, 174 So. 876. Pursuant to writs of certiorari granted by the Supreme Court in the Brant-ley-Clarkson’ case, that tribunal modified its holding in the Adams-Golson case and made the following statement:
“We are unable to make the distinction between the purpose of the mission of the wife as was made in Adams v. Golson as long as she is using the automobile belonging to the community with the express or implied consent of the husband. The wife is entitled to her own recreation, enjoyment and pleasures as well as the husband and the community owes her those things in the same manner as it owes her the food or the clothes she requires. If the husband, in using a car belonging to the community, commits a tort while on an errand in which he is to indulge in his own pleasures and recreation and thereby becomes liable, there is no reason which suggests itself why the same community, out of which the liability may have to be paid, should not likewise be liable for a tort committed by the wife under the same circumstances.” (Emphasis supplied) 217 La. 425, 46 So.2d 614, 617.
Our interpretation of the pronouncement of the Supreme Court in the Brantley case does not indicate that its reasoning and conclusion therein was intended to overrule in toto its holding in the Adams case. We think the extent of the effect of the pronouncement in the Brantley case was simply, as we have above expressed, to modify the severity of the holding in the Adams case.
However this may be, we think the above emphasized expression in the quoted extract from the opinion of the Supreme Court is most important under the facts established in the instant case. 'Mrs. Spam-pinato testified that she took the community automobile and left home without the knowledge of her husband. The exact testimony on this point was as follows:
“ * * * and this lady offered to pay the expenses to take her down, there and I needed the money and I knew Charlie wouldn’t let me, so I *267 •went without asking him. I just told my mother I was going.” (Emphasis supplied)
The defendant husband testified that h,e did not know his wife contemplated the trip and that he would not have permitted the use of the community automobile, which was necessary in the conduct of his restaurant business, if he had been informed as to his wife’s proposed excursion.
We do not think there was anything in the purpose or actions of the defendant wife in the instant case which comports with a community interest. We cannot consider the actions of the defendant wife as evidencing any legitimate pursuit of either “wholesome recreation or pleasure,” and it is completely evident that the mission was never intended to contribute anything of value to the community interest and welfare of the husband and wife. While we do not wish to be understood as holding that a wife is required to obtain the consent and permission of her husband to use the community automobile for a reasonable purpose or in the accomplishment of a community errand, we do not hesitate to- hold the action of this wife in deliberate defiance of her husband’s wishes, as constituting an inexcusable violation of the community interest. In our opinion this conclusion removes this case from the rule of behavior which was sanctioned as befitting a community purpose in the case of Brantley v. Clarkson.
There is almost a complete dearth of evidence as to the quantum of damages. The only reference to any basis of damages is found in a stipulation of counsel entered at the beginning of trial, the pertinent portion of which stipulation on this point reads as follows:
“It is stipulated by and between counsel for the plaintiff and defendant, that if Mrs. Vail, the plaintiff were sworn that she would testify that her husband was born in — I can’t say the name, L-E-H-R-A-T-O-N, Mississippi on July the 28th, 1909, that he was 46 years of age at the time of his death, that they were married on September the 1st, 1944 in Colfax, that the first child was born October the 14th, 1949 and his name is Zachary H. Vail, the second child was born December the 5th, 1956 and her name is Ruth Vail, both children are present here in court. That the husband’s income at the time of death was approximately $200.00 a month. * * * That * * * we wish to further testify that his occupation at the time of his death was a salesman, Your Honor, that he sold novelties from place of business to place of business.”
Why plaintiff sued on behalf of only one of her two children is not disclosed; there is nothing to indicate whether plaintiff and decedent were living together at the time of his death and, aside from the bare recital of average income of approximately $200 a month, there is not a single fact upon which to base any award of damages. Under these circumstances we think an award must be limited to a nominal amount.
For the reasons assigned the judgment appealed from is affirmed insofar as it rejected plaintiff’s demands against the defendant, Charles Spampinato, but it is annulled, reversed and set aside to the extent that it rejected plaintiff’s demands against the defendant, Mrs. Charles Spam-pinato, and
It Is Now Ordered, Adjudged and Decreed that there be judgment against the defendant Mrs. Charles Spampinato in favor of the plaintiff, Mrs. Vedna J. Vail, individually, in the sum of $5,00,0, and in her capacity as natural tutrix of the minor, Zachary H. Vail, in the sum of $5,000, with legal interest thereon from date of judicial demand until paid, together with all costs of both courts.